UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYSHAUD E. GREEN                                    CIVIL ACTION

VERSUS                                               NO. 12-955

WARDEN LYNN COOPER ET AL.                            SECTION "F"(2)

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It has recently been reassigned to me. Record Doc. No. 9. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C.A. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be DISMISSED WITH PREJUDICE.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court may hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    FACTUAL AND PROCEDURAL HISTORY

On December 18, 2008, petitioner Rayshaud E. Green and a co-defendant, Dominique Hawthorne, were charged by the Orleans Parish District Attorney in a bill of information with armed robbery in violation of La. Rev. Stat. § 14:64.[2] The Louisiana Fourth Circuit Court of Appeal subsequently summarized the facts of Green's case as follows:

> New Orleans Police Officer Raymond Ambrose III testified that on October 19, 2008, he and his partner, Officer Molten, responded to a call of a car-jacking. They met the victim, Johan Agurcia, at a 24-hour convenience store in the 1500 block of Franklin Avenue. Mr. Agurcia was upset and had a small tear to his forehead, from which blood seemed to be trickling. The victim directed the officers to the 3100 block of N. Roman Street, where he believed the car-jacking had occurred. Officer Ambrose said there was a streetlight on each corner of that block and one in the middle of the block. The officers canvassed the area for witnesses, but found none. He found no evidence on the scene.
>
> New Orleans Police Sergeant Asish Shah testified that on October 19, 2008, he received a call of a suspicious person in a green Honda at Allard Boulevard and City Park Avenue. When Sgt. Shah pulled up behind the vehicle, three males left the vehicle, leaving the engine running. He believed the driver was wearing a black t-shirt, and the other two were wearing white t-shirts. The three men were detained with the assistance of Detective Hal Amos. Sgt. Shah identified crime scene photos of the victim's vehicle and the scene. He also identified both defendants in court as being two of the individuals who had been in the victim's vehicle.
>
> Detective Harold Amos testified that when the three individuals in the victim's car saw a marked police unit come on the scene, they exited and walked briskly toward Delgado College. Det. Amos identified defendants in court as two of the individuals who had been in the victim's car. He recalled that one of the defendants was wearing basically all black and the other a white t-shirt and blue jeans. Det. Amos participated in an on-the-scene identification procedure during which he displayed each of the three individuals to the victim, one at a time. He recalled that the victim made an identification. Det. Amos testified that he went to the scene at approximately 11:57 a.m., and that the victim made his identification

---

[2]State Record Vol. 1 of 3, Bill of Information, 12/18/08.

at approximately 2:00 p.m.  Det. Amos confirmed on cross examination that the victim had been in his vehicle prior to identifying the defendants.

NOPD Detective Mary Colon met with the victim on the scene.  He did not speak English well, but had a friend with him who translated.  The victim identified the two defendants at the scene.  Det. Colon identified photographs of the defendants, confirming that the photos depicted the defendants as they appeared at the time they were arrested.  The victim identified both defendants at the scene that day, from a distance of approximately one car length.

Through the use of an interpreter, the victim, Johan Nahun Agurcia, testified that on October 2008 he had been out with friends on Bourbon Street.  At approximately 3:30 a.m., along with his friend Alex, they drove to Chalmette to drop off another friend who had been with them on Bourbon Street.  On his way back home from Chalmette he became lost and at approximately 4:00 a.m. he came to a stop sign at the 3100 block of North Roman Street in New Orleans when two individuals appeared.  One of the men put a gun to his head, told him he was going to kill him, and struck him in the forehead with the gun.  The victim described that gunman–Det. Colon said the gunman was defendant Hawthorne–as wearing a black t-shirt with a white square with some type of drawing in the white square.  The victim testified that he could not see the gunman's face as he was wearing a mask.  However, the victim identified the black t-shirt seized from defendant Hawthorne at the time of his arrest as the one Hawthorne was wearing at the time of the robbery. . . .

The victim described the second robber, who robbed his friend Alex, as wearing a white shirt and his hair in long, little, twisted braids.  The victim identified both defendants in court.

The victim testified that when he went to the location where police had recovered his car, he saw the individual wearing the black shirt, who was wearing a mask during the robbery, and the one with the white t-shirt. He did not recognize the third person.  When asked whether the police told him who to identify, the victim said, "No, no.  I recognized them."  The victim was asked if the robber wearing the white t-shirt was wearing a mask, and he replied in the negative.  The follow-up question was, "So, you were able to see his hair and face that night?"  Id. The victim replied, "Only the hair and the shirt."  Id.  The victim stated that while he recovered whatever had been in his vehicle when it was stolen, he did not recover any of the items that were in his pockets that had been taken by the robber, specifying his passport, cell phone and eyeglasses.

The victim testified on cross examination that he had consumed two beers on Bourbon Street on the night/early morning of the robbery—from approximately 11:30 p.m. to 3:00 a.m. The victim admitted that he could not see the face of the gunman who robbed and struck him in the face because the gunman was wearing a mask. . . . The victim confirmed that the individual with the white t-shirt went to the passenger side of the car during the robbery and robbed his friend, Alex.

State v. Green, 84 So. 3d 573, 576-78 (La. App. 4th Cir. 2011); State Rec. Vol. 1of 3, Case No. 2010-KA-0791, 4th Cir. Opinion at pp. 1-4, 9/28/11.

Before trial, Green filed a motion seeking various kinds of relief, including suppression of the victim's identification of Green as one of the perpetrators,[3] which the state trial court orally denied at a hearing on July 15, 2009.[4] On August 24, 2009, at the end of a two-day jury trial, both defendants were found guilty as charged.[5] On November 6, 2009, Green was sentenced to fifty (50) years in prison at hard labor, without benefit of probation, parole or suspension of sentence.[6] Green filed a motion to reconsider his sentence on grounds that it was unconstitutionally excessive, was based on consideration of improper factors, failed to consider mitigating factors that would have been revealed by a full pre-sentence investigation, and was rendered under a statute that included an unconstitutional mandatory minimum. The attached proposed order denied the motion with a handwritten single word.[7]

---

[3]State Record Vol. 1 of 3, Defendant's Motion for Preliminary Hearing, Discovery, Suppression of Evidence, 1/21/09, at p. 4.

[4]State Record Vol. 1 of 3, Orleans Parish Criminal District Court Docket Master, entry dated 7/15/09.

[5]State Record Vol. 2 of 3, Trial Transcript at p. 83.

[6]Id., Sentencing Hearing Transcript, 11/6/09, at pp. 17-18.

[7]State Record Vol. 1 of 3, Motion to Reconsider Sentence and attached Order, file-stamped received 11/6/09.

Both Green and his co-defendant filed timely direct appeals that were addressed jointly.  On September 28, 2011, the Louisiana Fourth Circuit Court of Appeal affirmed both convictions and sentences.[8]  The Louisiana Supreme Court on March 9, 2012 denied without reasons Green's petition for writ of certiorari and review.[9]  Green's conviction became final 90 days later, when he did not seek a writ of certiorari in the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

II.     FEDERAL HABEAS PETITION

On April 16, 2012, the clerk of this court filed Green's petition for federal habeas corpus relief in which Green asserts the following claims:[10]  (1) The verdict form submitted to the court by the jury is defective because it is neither signed nor dated and fails to specify the precise conviction offense.  (2) The victim's identification of Green as one of the robbers was unduly suggestive.  (3) The prosecution's closing argument

---

[8]State v. Green, 84 So. 3d 573 (La. App. 4th Cir. 2011); State Record Vol. 1 of 3 and 3 of 3, Case No. 2010-KA-0791, Opinion, 9/28/11.

[9]State v. Green, 84 So. 3d 551 (La. 2012); State Rec. Vol. 3 of 3, Case No. 2-11-KO-2316, Order, 9/9/12.

[10]Rec. Doc. No. 2-1, Memorandum in Support, pp. 4-5.

was inflammatory and improper, and the trial court erred in overruling defendant's objections to it. (4) The trial court imposed an unconstitutionally excessive sentence.

The State filed a response in opposition to Green's petition in which it fully addresses the merits, conceding both that the petition was timely filed and that the claims are fully exhausted.[11]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[12] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Green's petition which was filed in this court on April 16, 2012.

The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

_____

[11]Rec. Doc. No. 14.

[12]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes – and I find – that Green's petition is timely filed and that all of his claims are exhausted. Accordingly, I will address the merits of Green's claims.

## IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); accord Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (citing Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V. DEFICIENT JURY VERDICT FORM

In his first claim, which relies exclusively on Louisiana law, Green argues that the verdict form returned by the jury was deficient because it was unsigned by the jury foreman, was not dated and failed to specify the particular offense for which he was convicted. He suggests, erroneously, that no polling of the jury occurred after the verdict was returned that might have cured these procedural deficiencies under Louisiana law. He asserts that "[n]ullification of the verdict is required"[13] because of the deficiencies in the verdict form.

Although my research has located no decision establishing the appropriate standard of federal habeas review under the AEDPA as to this particular kind of claim, it appears to present a mixed question of law and fact that would provide relief only if the state courts' decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. See Knight v. Walsh, 524 F. Supp. 2d 255, 288 (W.D.N.Y. 2007) (alleged error in state court's use of "an annotated [jury] verdict sheet" in violation of state law presents no basis for federal habeas relief in the absence of Supreme Court constitutional precedent prohibiting same).

On one hand, just as Green asserts, the jury verdict form in the state court record does not contain the signature or handwritten date of the jury foreman and fails to note

_____

[13]Record Doc. No. 2-1, Attachment and Memorandum in Support of Habeas Claims at pp. 7-9 of 28.

any specific offense as to which the handwritten "guilty" notation on the back of the form[14] applies, whether armed robbery or some lesser included offense listed on the front page of the form.[15]

On the other hand, the record is clear that there was no uncertainty or doubt at trial about the jury's verdict. The references to the jury's return of a verdict reflected in the trial transcript read: (1) "The Court: Publish the verdicts. Mrs. Butscher (Minute Clerk): In case number 4820742, State of Louisiana versus Rayshaud Green, we, the jury, find the defendant, Rayshaud Green, guilty."[16] (2) "(JURY RETURNED A VERDICT OF GUILTY AS CHARGED AS TO BOTH DEFENDANTS.).[17] A written jury polling sheet, apparently obtained pursuant to Louisiana Code of Criminal Procedure article 812(2),[18] is attached to the verdict form in the state court record. The written

_____

[14]State Rec. Vol. 2 of 3, Jury Verdict Form (back page) at p. 61.

[15]Id. at p. 60; State Record Vol. 1 of 3, Jury Verdict Form (front page), Case No. 482-742, Orleans Parish Criminal District Court, 8/24/09.

[16]State Rec. Vol. 2 of 3, Trial Court Order Granting Motion to Supplement the Record With Complete Transcript of the Verdicts of the Jury, 8/5/10, with attached transcript at p. 2.

[17]State Record Vol. 2 of 3, Trial Transcript at p. 83.

[18]Article 812(2) provides in pertinent part:
    The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results. If a sufficient number of jurors as required by law to reach a verdict answer "yes[,]" the clerk shall so inform the court.
La. Code Crim. P. art. 812(2).

polling sheet, signed separately by each of the twelve (12) jurors, establishes that the jury

voted ten to two in favor of a guilty verdict as to Green.[19]  The remainder of the state

court record contains several docket and minute entries made by court officials clearly

specifying that the jury's verdict against Green was guilty as charged of armed robbery

in violation of La. Rev. Stat. § 14:64.[20]  Thus, the record is replete with indications that

the jury's verdict was clear to all involved and that there was never any question or doubt

about it before the trial court.

　　To the extent Green argues that the verdict form failed to comply with the

requirements of Louisiana law, a federal court does "not sit as [a] 'super' state supreme

court in a habeas corpus proceeding to review errors under state law."  Wilkerson v.

Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke,

131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).

This court's analysis focuses instead on due process considerations, and due process

requires that the court grant habeas relief only when the errors of the state court make the

underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283,

---

[19]State Rec. Vol. 1 of 3, Jury Polling Slips.

[20]State Record Vol. 1 of 3, Orleans Parish Criminal District Court Docket Master, entry dated 8/24/09; Minute Entry of Orleans Parish Criminal District Court Minute Clerk Marcelle Butscher dated 8/24/09 (For defendant Rayshaud E. Green:  As to Count 1, RS 14 64 Armed Robbery, the defendant was found guilty by the jury."); Sentence of the Court Minute Entry of Orleans Parish Criminal District Court Minute Clerk Marcelle Butscher dated 11/06/09 ("Whereas Rayshaud E. Green was by law convicted/submitted before the Criminal district court for the Parish of Orleans of Count 1, violation RS 14 64 . . .").

1293 (5th Cir. 1986). Thus, the court may consider Green's arguments only in the context of federal constitutional law.

In this court, Green has made no argument and cited no authority that might support a finding that his jury verdict form somehow violated established federal constitutional standards. The State's response and my own research have unearthed only a few reported decisions that touch even tangentially upon such a claim under federal law. See, e.g., Knight, 524 F. Supp. at 288 ("Significantly, Petitioner has failed to point to, and the court's research has not revealed, any . . . Supreme Court constitutional jurisprudence providing for habeas relief based on the use of [a deficient jury] verdict sheet as Petitioner alleges in this case."). The few reported decisions addressing such claims have uniformly denied relief, rejecting "mere error of state law" as "not of constitutional dimension," Gonzales v. Thaler, 468 F. App'x 404, 406 (5th Cir. 2012), and finding any such error harmless in the constitutional sense.

For example, in Gonzales, the habeas petitioner complained that his verdict form failed to comply with Texas state procedural law because it was a general verdict form that did not include an instruction to the jury that its verdict must be unanimous. Id. at 405. Assuming that the petitioner was arguing that the state law error violated his due process rights, the Fifth Circuit stated that "the trial court's error is subject at best to harmless-error analysis on federal habeas review. The relevant inquiry under the

harmless error standard is whether the flaw . . . had substantial and injurious effect or influence in determining the jury's verdict." Id. at 406 (quotations and citations omitted). The Gonzales court found no prejudice of constitutional magnitude arising from the state law procedural error relating to the jury verdict form.

In Anderson v. Dretke, No. 4:05-CV-0356-Y, 2005 WL 3005036, at *4 (N.D. Tex. Oct. 26, 2005), report & recommendation adopted, 2005 WL 3150246 (N.D. Tex. Nov. 23, 2005), the habeas petitioner complained that his jury verdict form was incorrect because it had been "signed in two different spaces in error" and then was corrected by marking out the incorrect portion. The court denied relief, stating:

> Although Anderson alleges he was denied his constitutional right to a fair and impartial trial under the Fifth and Fourteenth Amendments as a result of the trial court's actions, he cites to no authority supporting his argument, and none is found. Furthermore, even if he could demonstrate a constitutional error as a result of the trial court's procedures in this instance, the error is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Anderson cannot making [sic] such a showing in light of the fact that the jury was polled after the verdict was read, and each juror indicated that he or she had voted guilty.

Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Similarly, in Martinez v. Medina, No. 10-cv-00828-WJM, 2011 WL 2297686 (D. Colo. June 9, 2011), the jury was provided with two separate verdict forms, one concerning first degree murder charges and their lesser included offenses, and a second concerning manslaughter. The jury completed the first form with a guilty finding, but

returned the second form concerning manslaughter <u>un</u>signed.  The court denied federal habeas relief.

> The Supreme Court has <u>never</u> held that it is structural error to fail to require a verdict to be entered on a lesser non-included offense when a jury finds a defendant guilty of the parent offense.  Therefore, federal habeas review is not available for this claim as it does not implicate clearly established federal law.

<u>Id.</u> at *4.

Green's challenge to the sufficiency of the jury verdict form on grounds that it violated Louisiana state law was fully considered by the Louisiana Fourth Circuit on his direct appeal.  By denying Green's subsequent writ application, the Louisiana Supreme Court necessarily acquiesced in the state appellate court's finding that he was not entitled to relief on the claim under state law.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).  Federal review of this claim on state law grounds is prohibited.

Even applying due process analysis, however, Green cannot succeed unless he shows that the jury verdict form was so defective that it amounted to more than harmless error and rendered his trial fundamentally unfair.  In Green's case, the Louisiana Fourth Circuit found that "[c]learly, the verdicts did not comport with" the requirements of Louisiana procedural law, specifically Louisiana Code of Criminal Procedure articles 810, 811 and 813.[21]  The court held, however, that the mere formulaic mistakes "all

---

[21]At the time of Green's trial, Article 810 provided:  "When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall

constitute harmless errors, in that the errors did not affect [Green's] substantial rights . . . ." Green, 84 So. 3d at 579. Specifically, the court correctly noted that Green was indisputably charged with armed robbery; that "[t]he jury knew this;" and that "[t]he placement on the verdicts of 'Guilty' as the first responsive verdict" on the form clearly meant "'guilty' of the offense charged." Id. In the overall context of the trial, the state appellate court held that the jury's verdict was "in fact, not ambiguous" and "clearly convey[ed] the intention of the jury" to find Green guilty of armed robbery. Id.

Applying the foregoing legal standards and under these circumstances, Green's claim concerning the deficient jury verdict form in no way establishes that the state courts' decision in this regard was contrary to or an unreasonable application of clearly established federal constitutional precedent. It cannot be concluded that his constitutional rights were violated in any way by the jury's rendition of its verdict form. Green is not entitled to federal habeas corpus relief on this claim.

---

sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury. . . . The foreman of the jury shall deliver the verdict to the judge in open court." La. Code Crim. Proc. art. 810. Article 811 stated: "If the verdict is correct in form and responsive to the indictment, the court shall order the clerk to receive the verdict, to read it to the jury, and to ask: 'Is that your verdict?' If the jury answer 'Yes,' the court shall order the clerk to record the verdict and shall discharge the jury." Id. art. 811. Article 813 provided: "If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal." Id. art. 813.

VI.    SUGGESTIVE IDENTIFICATION PROCEDURE

Green argues that the procedure by which the victim identified him as one of the armed robbers was so "highly suggestive" that it resulted in a "very substantial likelihood of irreparable misidentification" in violation of his constitutional due process rights.[22] Specifically, he argues that he was one of only a few suspects who were surrounded by police and that one of the persons was wearing a black tee shirt of the sort that had been identified as the perpetrator's shirt, all under circumstances that made the identification unreliable.

The admissibility of an eyewitness's identification is a mixed question of law and fact. Coleman v. Quarterman, 456 F.3d 537, 544 (5th Cir. 2006) (citing Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997)); see also Sumner v. Mata, 455 U.S. 591, 597 (1982) ("[T]he ultimate question as to the constitutionality of the pretrial identification procedures . . . is a mixed question of law and fact . . . .").

In Simmons v. United States, 390 U.S. 377 (1968), the United States Supreme Court established a two-prong test for the exclusion of identifications based on impermissibly suggestive identification procedures that deny due process. The first prong requires determination of whether the identification procedure was impermissibly suggestive. If it is not, the inquiry ends. If it is, a separate inquiry must be made as to

_____

[22]Record Doc. No. 2-1, Memorandum in Support at p. 8.

whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

In <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114-16 (1977), upon which the Louisiana Fourth Circuit expressly relied in affirming Green's conviction, <u>Green</u>, 84 So. 3d at 580, the United States Supreme Court reaffirmed several factors enumerated in <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972), that should be considered when reviewing the reliability of a witness's identification of a defendant. These include: (1) the opportunity of the witness to view the subject, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, (5) the elapsed time between the crime and the identification, and (6) the corrupting influence of the suggestive identification itself. <u>Herrera v. Collins</u>, 904 F.2d 944, 946 (5th Cir. 1990); <u>Passman v. Blackburn</u>, 652 F.2d 559, 570-71 (5th Cir. 1981).

In its detailed opinion affirming the conviction, the Louisiana Fourth Circuit acknowledged that the procedure by which the victim identified Green as one of the robbers was "somewhat suggestive." <u>Green</u>, 84 So. 3d at 581. However, the state appellate court also faithfully cited and fastidiously applied the <u>Manson</u> factors and correctly concluded that the identification procedure was not unconstitutionally suggestive. <u>Id.</u> at 582.

Testimony concerning the identification procedure was provided by the victim at the pretrial suppression hearing[23] and by the victim and the investigating officers at trial.[24] On one hand, the "somewhat suggestive" aspects of the identification procedure were few. The victim was brought to the scene where the officers had apprehended three suspects who had been seen occupying the victim's carjacked vehicle. The victim identified two of the suspects as the men who had robbed him, based principally on their race, the color of the shirts they wore and their hair styles. The victim could not identify the third suspect. At trial, the victim was quite clear in his identification:

> Q: Now when you got on the scene to retrieve your vehicle and you identified these individuals, did the police tell you, you had to pick somebody? . . . Did they tell you who to pick?
> A: No, no. I recognized them.
> Q: Did they offer or promise you anything for picking anybody?
> A: No.
> Q: Did they force or threaten you into picking anybody?
> A: No.[25]

The investigating officers were throughly cross-examined concerning the basis upon which the identifications were made, so that the jury was able to determine for itself the reliability of the identification and the weight that should be given to it.

---

[23]State Record Vol. 2 of 3, Transcript of Hearing on Motion to Suppress, 5/7/09.

[24]Id., Trial Transcript at pp. 25-77, 8/20/09.

[25]State Record Vol. 2 of 3, Trial Transcript at p. 66.

On the other hand, evaluation of the <u>Manson</u> factors weighs heavily in favor a finding that the identification procedure was reliable and constitutionally sufficient. The Louisiana Fourth Circuit's thorough and accurate <u>Manson</u> evaluation cannot be improved upon by this court and bears repeating here.

[A]pplication of the five <u>Manson</u> . . . factors shows that defendant Green has failed to prove that there was a substantial chance of misidentification.

First, although the robbery occurred in darkness, Officer Ambrose testified that there was a street light on each corner of the block and one in the middle of the block. The victim recalled the defendant Green getting into the driver's seat of his car. The victim had no problem remembering defendant Green's distinctively braided hair and white t-shirt–and his identification of Green was based on his recollection of Green's braided hair and t-shirt. The victim also remembered defendant Hawthorne's black t-shirt with the white square.

Except to the extent that he did not see defendant Green's face, the evidence is that the victim paid attention during the robbery. He remembered the gun carried by the gunman, the t-shirts worn by the perpetrators, defendant Green's distinctively braided hair, and what occurred during the robbery.

While defendant Green assails the victim's inability to provide a more detailed description by incorporating more physical characteristics, the defendant essentially concedes that the victim's prior description of the white t-shirt and braided hair was accurate.

When asked during the motion to suppress hearing whether he was able to identify the two individuals that robbed him, the victim stated, "<u>Yes, surely</u>." Defendant Green fails to cite any evidence calling into question the <u>certainty</u> of the victim's identification at the time it was made. The burden is on the defendant to show that the identification was unreliable.

The identifications by the victim in the instant case were made <u>only nine hours after</u> the crimes were committed. While nine hours between the crime and the identification might be somewhat longer that [sic] in many, even most, one-on-one identification scenarios, it is not long at all insofar

as identification procedures in general and was done within a short period
of time after the defendants were apprehended with the victim's car.

*Green*, 84 So. 3d at 582 (emphasis added). See *United States v. Craft*, 691 F.2d 205, 205

(5th Cir. 1982) (citing *Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 198; *Passman*, 652

F.2d at 569-74) ("[O]ne-on-one show-ups of the accused separately to the bank tellers,

immediately after he was arrested two hours after the robbery, did not taint the reliability

of their in-court identification of the accused as one of the three robbers" when the tellers

"had the opportunity and had exercised careful and sustained attention upon the accused

during the minutes of the robbery, . . . their post-robbery and pre-arrest descriptions of

him were substantially accurate and pointed a reliable finger at the defendant even prior

to the show-up identification, . . . their identifications were made immediately and

without equivocation, and . . . [only two hours] had elapsed between the robbery and the

show-ups."); *Hannah v. Crosby*, No. 804CV1072T24EAJ, 2005 WL 2346966, at *7

(M.D. Fla. Sept. 26, 2005) (citing *Biggers*, 409 U.S. at 198; *United States v. Rice*, 652

F.2d 521, 528 (5th Cir. 1981)) (Petitioner Hannah was convicted of carjacking and armed

robbery. The court held that the one-to-one show-up was not unconstitutionally tainted

when the victim, Blanton, was taken to a convenience store by police, who had told him

only that his car had been located. Blanton identified petitioner at the store "perhaps 30

minutes after the crime and immediately upon Blanton's 'spotting' Hannah inside a

convenience store, without any suggestion having been made to him beforehand that his

assailant was present in the store; and Blanton was completely certain of his identification" because he "had gotten a good look at his assailant's face . . . . He was able to describe his assailant in fair detail, describing his hair . . . , the color of his clothing, as well as his race, and Hannah fit Blanton's description of his assailant."); see also United States v. Lyle, 112 F. App'x 324, 325 (5th Cir. 2004) (citing Craft, 691 F.2d at 205) (defendant failed to show that "one-man show-up identification affected any in-court identification," especially when evidence of petitioner's guilt of armed bank robbery was overwhelming).

This court wholeheartedly agrees with the state courts' application of the Manson factors and the conclusions they reached based on that evaluation. The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Green is not entitled to federal habeas corpus relief on this claim.

VII.    PROSECUTORIAL MISCONDUCT

Green argues that the prosecution improperly argued in summation to the jury that the defense was treating the victim "like an 'outlaw'" at trial because of his national origin, thus inflaming the jury based on "issues of race and prejudice," and improperly asked the jury to show sympathy for the victim.[26] He suggests that the state trial court should have granted his motion for a mistrial instead of erroneously overruling the

---

[26]Record Doc. No. 2-1, Memorandum in Support at pp 15-16.

defense objection on grounds that the prosecution was merely engaging in permissible argument.[27]

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remarks must be evaluated in the context of the entire trial. Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985).

District courts in the Fifth Circuit must apply a two-step analysis when reviewing claims of prosecutorial misconduct. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999). First, the court must determine whether the prosecutor made an improper remark. Wise, 221 F.3d at 152. "If an improper remark was made, the second step is to evaluate whether the

_____

[27]Id. at p. 17.

22

remark affected the substantial rights of the defendant." Id. A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones, 864 F.2d at 356; accord Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers, 848 F.2d at 609 (footnote and citations omitted).

For purposes of federal habeas review under the AEDPA, Green's claim of prosecutorial misconduct presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)).

Green's arguments are wholly conclusory and factually erroneous in one key respect. He has not established unconstitutional conduct by the prosecutor that warrants federal habeas relief. The trial transcript contains the following relevant excerpts, which the Louisiana Fourth Circuit specifically addressed:

MR. PHILLIPS [prosecutor]:
They want you to believe that Mr. Agurcia is an outlaw. I'm going to tell you what I mean by that. YOU look up the word outlaw in the dictionary, you know what it would tell you? Someone who is not afforded the benefits and the protections of the law.
MR. BELJEAN [defense counsel]:
I'm going to object to that, Judge. Defense is not–
THE COURT:
That's overruled.
* * * *
MR. PHILLIPS:
They want you to take this law, they want you to take this book, and throw it away because it don't matter when it comes down to Mr. Agurcia.
MR. MALVEAU [defense counsel]:
Judge, I'm going to object.
THE COURT:
Approach the bench.
(DISCUSSION HAD AT BENCH W/OUT RECORD.)
MR. PHILLIPS:
You want to feel sorry for somebody? Feel sorry for this man working hard to support a family, three kids. Came out here to work, not run around putting guns in peoples' faces and steal their cars and their wallets and their other belongings. That's who you feel sorry for. That's who you feel sorry for, ladies and gentlemen.
MR. BELJEAN:
Judge, I'm going to object to the State asking the jury for sympathy and decide the case based on sympathy.
THE COURT:
Overruled.

Green, 84 So. 3d at 583; State Record Vol. 2 of 3.

I cannot conclude that these sparing and few comments by the prosecutor, while

unfortunate, so infected the trial as a whole that it was rendered fundamentally unfair.

The prosecutor's comments were limited and were neither persistent nor pronounced.

Contrary to Green's factually erroneous argument, the prosecutor made no explicit appeal based on race or national origin.

When viewed as a whole, the record contains ample evidence apart from the prosecutor's stray remarks upon which the jury was able to conclude that Green was guilty, including the victim's identification of Green as a perpetrator and Green's apprehension in the carjacked vehicle in the company of another perpetrator who was identified as the gunman who struck the victim during the robbery. In the overall context of this trial, it cannot be concluded that Green's conviction would not have resulted, but for the prosecutor's comments during argument. As the Louisiana Fourth Circuit reasonably concluded, "[i]t cannot be said . . . that these comments influenced the jury and contributed to the verdicts." Green, 84 So. 3d at 584.

Other courts have rejected similar claims and denied federal habeas relief when petitioners had asserted comparable or arguably more egregious circumstances. See Ripkowski v. Thaler, No. 4:07-4097, 2010 WL 1404089, at *16 (S.D. Tex. Mar. 31, 2010), aff'd, 438 F. App'x 296 (5th Cir. 2011) (citing Wise, 221 F.3d at 152; Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000)) (Habeas petitioner complained "that the prosecutor used terms such as 'terrorist, 'killer' and 'evil' in closing argument." The court held that the "prosecutor's rhetoric referred to the evidence and pled for law enforcement. While the prosecutor's use of the term 'terrorist' was somewhat of an

overstatement, and was undesirable, use of the term did not render Ripkowski's trial fundamentally unfair and did not affect his substantial rights."); <u>Walker v. Quarterman</u>, No. H-07-3108, 2009 WL 497155, at *20-21 (S.D. Tex. Feb. 26, 2009) (citing <u>United States v. Hasting</u>, 461 U.S. 499, 511-12 (1983); <u>Cotton v. Cockrell</u>, 343 F.3d 746, 752 (5th Cir. 2003); <u>United States v. Chase</u>, 838 F.2d 743, 749-50 (5th Cir. 1988)) (Petitioner argued that the prosecutor made "a grossly improper appeal to the jury's emotions and sympathy" when the prosecutor read to the jury during closing argument a poem written by the 14-year-old rape victim and "persuaded the jury to convict on a moral and emotional basis rather than based on their consideration of the relevant evidence." The court held that the prosecutor was responding to defense counsel's argument that no sexual assault had occurred, that the response was not misconduct in light of the overwhelming evidence of petitioner's guilt, and that petitioner "failed to show that the prosecutor's comments and reading of the Complainant's poem rendered his trial fundamentally unfair."); <u>Cockrell v. Cockrell</u>, No. Civ.SA-99-CA-1119-FB, 2003 WL 1906163, at *25 & n.181 (W.D. Tex. Mar. 31, 2003) (Prosecutor argued in closing at murder trial that the defendant has "brought you into this. Don't feel sorry for him. Feel bad about what you have to do. That is okay. But don't feel sorry for this killer and don't let the blood of that last victim be on your hands." The court held that the closing argument "did not 'so infect' the petitioner's trial with unfairness as to deny petitioner

due process of law" because the court found "no authority holding that a prosecutor's colorful or hyperbolic pleas for law enforcement, which drew no objection at trial from defense counsel, mandate reversal of a conviction supported by overwhelming evidence.").

The state courts' denial of relief on this ground was not contrary to or an unreasonable application of federal constitutional precedent. Green is not entitled to habeas relief on this claim.

VIII.  <u>EXCESSIVE SENTENCE</u>

Green alleges that his 50-year prison sentence was constitutionally excessive and violated Louisiana law, specifically the provisions of the Eighth Amendment, Louisiana Code of Criminal Procedure Article 894.1 and Article 1, Section 20 of the Louisiana Constitution. He argues that the unfairness of his 50-year prison sentence is shown by the fact that he was simply "lumped . . . in" with his co-defendant, a second offender, without individualized consideration of personal and criminal history sentencing factors relevant to him.[28] Green contends that his 50-year prison sentence is "grossly disproportionate" to the crime for which he was convicted, armed robbery.[29] He raised

---

[28]Record Doc. No. 2-1, Memorandum in Support at p. 23.

[29]<u>Id.</u> at p. 24.

these same arguments on direct appeal, and the state appellate court denied relief for lack of merit with detailed, specific reasons.

As discussed above, the state trial court's compliance with Louisiana's sentencing laws, specifically Louisiana Code of Criminal Procedure article 894.1 and the state constitution in this case, is not the concern of federal habeas review. Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991)). Instead, federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000); Jones v. Warden, No. 3:11-cv-1761, 2012 WL 2839411, at *13 (W.D. La. May 14, 2012), report & recommendation adopted, 2012 WL 2839373 (W.D. La. July 09, 2012); see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence).

If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences

imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished.  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds by United States v. O'Brien, 130 S. Ct. 2169, 2180 (2010), as stated in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010).  As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained in only "extreme" or "extraordinary" cases.  Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

For purposes of federal habeas review under the AEDPA standard, an excessive sentence claim presents a question of law.  Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999).

The sentencing range for the crime of armed robbery is set out in La. Rev. Stat. § 14:64(B), which provides:  "Whoever commits the crime of armed robbery shall be

imprisoned at hard labor for <u>not less than ten years</u> and for <u>not more than ninety-nine years</u>, without benefit of parole, probation, or suspension of sentence." La. Rev. Stat. § 14:64(B) (emphasis added). Green's 50-year prison sentence, at less than the mid-point between the mandatory minimum and the statutory maximum, was clearly within that range. Green's sentence was also in the range of 35 to 50 years in prison that the Louisiana Supreme Court has repeatedly approved for first offenders convicted of armed robbery. <u>State v. Smith</u>, 839 So. 2d 1, 7 (La. 2003); <u>State v. Thomas</u>, 719 So. 2d 49, 50 (La. 1998) (citing <u>State v. Nealy</u>, 450 So. 2d 634, 640 (La. 1984); <u>State v. Walker</u>, 449 So. 2d 474, 474 (La. 1984); <u>State v. Dunns</u>, 441 So. 2d 745, 746 (La. 1983); <u>State v. Huntsberry</u>, 439 So. 2d 432, 433 (La. 1983)); <u>see also</u> <u>State v. Gordon</u>, 85 So. 3d 242, 248-49 (La. App. 3d Cir. 2012), <u>writ denied</u>, No. 2012-K-0659, 2012 WL 4215762 (La. Sept. 14, 2012) (citing <u>Smith</u>, 839 So. 2d at 4) (40-year sentence for armed robbery "is not unconstitutionally excessive" because it "is within the sentencing range set out by the legislators and is within the range of sentences the supreme court has deemed as acceptable for a first time felony offender.").

Green's sentence was less than sentences imposed by some Louisiana courts in similar criminal situations. In <u>State v. Taylor</u>, 905 So. 2d 451, 459-60 (La. App. 5th Cir. 2005), a 19-year old first felony offender was convicted of two counts of armed robbery

and sentenced to 60 years imprisonment.[30]  Like Green, the defendant in Taylor did not personally discharge a weapon and did not himself injure the victim.[31]  The Louisiana Fifth Circuit found that defendant's sentence was not constitutionally excessive, stating: "[D]efendant's sentence of 60 years is within the statutory sentencing range . . . and does not shock our conscience."  Id. at 461.[32]  In State v. Falkins, 880 So. 2d 903, 906 (La. App. 5th Cir. 2004), the defendants, both first offenders, were found guilty of four counts of armed robbery and were each sentenced to 99 years.[33]  Neither defendant discharged a weapon nor injured a victim.  One defendant did not enter the bank that had been robbed, but remained outside in the getaway car.  Id. at 912.  The Louisiana Fifth Circuit found no constitutional violation, noting:  "A review of the jurisprudence reveals that ninety-nine-year sentences imposed upon defendants convicted of armed robbery have been upheld in many cases, including cases in which the victims were not physically injured."  Id. (citations omitted).[34]

---

[30]The state trial court specified that the 60-year sentences on each count were to run concurrently. Id. at 453.

[31]In contrast, the victim in the instant case was injured, albeit slightly.

[32]Because the defendant failed to challenge his 60-year sentence at the trial level, the state appellate court was limited to reviewing his sentence for constitutional excessiveness.  Id. at 458.

[33]The state trial court specified that the 99-year sentences on each count were to run concurrently. The defendants were later multiple-billed, found to be second felony offenders and sentenced to 110 years.  Id. at 906, 911-12.

[34]Because the defendants failed to challenge their sentences at the trial level, the state appellate court was limited to reviewing their sentences for constitutional excessiveness.  Id. at 911.

Green has not shown that his sentence was grossly disproportionate or unconstitutionally excessive in light of the crime for which he was convicted. Green's sentence was only about one-half of the maximum available sentence. It appears that the sentence was entirely appropriate given the heinous nature of the robbery; its surrounding circumstances, including carjacking; and the use of violence, including injuries inflicted upon the unresisting victim. The sentencing judge specifically noted Green's particular characteristics, including his age, employment status, prior conviction, his status as a principal to an armed robbery and his knowing participation in the crime.[35] The state courts properly considered that Green was a second offender who was a principal in the commission of a serious crime presenting great risk of great bodily harm and death to an innocent victim. Green, 84 So. 3d at 585.

Other courts have rejected similar claims and denied federal habeas relief when petitioners had asserted comparable or arguably more egregious circumstances. See Wimberley v. Whitley, 41 F.3d 663, 1994 WL 684703, at *1 (5th Cir. Nov. 17, 1994) (Ninety-nine-year sentence for armed robbery was not unconstitutionally excessive when petitioner pleaded guilty to carrying a pellet gun during robbery in which his co-defendant carried a .38 caliber revolver; they robbed at least ten customers in a store; and petitioner had a separate first-degree murder charge pending against him arising out of

---

[35]State Record Vol. 2 of 3, Sentencing Hearing Transcript at pp. 16-18.

events that occurred immediately after the robbery); Harper v. Hubert, No. 06-10556, 2008 WL 4534097, at *7 (E.D. La. Oct. 7, 2008) (citing Glover v. Hargett, 56 F.3d 682, 685 (5th Cir. 1995); Wimberley, 1994 WL 684703, at *1) ("sentence of forty-nine and one-half years imprisonment for the grave offense of armed robbery is not grossly disproportionate"); McCline v. Epps, No. 4:05CV89-P-S, 2008 WL 4457842, at *6 (N.D. Miss. Sept. 30, 2008) (sentences of 30 years for armed carjacking and 45 years for armed robbery that did not exceed the statutory maximum did "not fall into the 'exceedingly rare' or 'extreme' category as discussed in Lockyer").

The state courts' denial of relief on this issue was not contrary to established Supreme Court case law, nor was it an unreasonable application of Supreme Court precedent. Green is not entitled to relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, Green's petition for habeas corpus relief is without merit. Thus, **IT IS RECOMMENDED** that Green's petition for habeas corpus relief be DENIED and DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[36]

New Orleans, Louisiana, this _____2nd_____ day of November, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[36]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.